# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**LOGAN EUGENE ROWE,**

          **Plaintiff,**

    **v.**                            **CASE NO. 19-3024-SAC**

**SUMNER COUNTY, et al.,**

          **Defendants.**

## MEMORANDUM AND ORDER

This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff, a prisoner, proceeds pro se and seeks leave to proceed in forma pauperis.

### The motion to proceed in forma pauperis

This motion is governed by 28 U.S.C. § 1915(b). Because plaintiff is a prisoner, he must pay the full filing fee in installment payments taken from his prison trust account when he "brings a civil action or files an appeal in forma pauperis[.]" § 1915(b)(1). Pursuant to § 1915(b)(1), the court must assess, and collect when funds exist, an initial partial filing fee calculated upon the greater of (1) the average monthly deposit in his account or (2) the average monthly balance in the account for the six-month period preceding the filing of the complaint. Thereafter, the plaintiff must make monthly payments of twenty percent of the preceding month's income in his institutional account. § 1915(b)(2). However, a prisoner shall not be prohibited from bringing a civil action or appeal because he has no means to pay the initial partial filing fee. § 1915(b)(4).

The financial statement supplied by the correctional facility where plaintiff is incarcerated reflects an average deposit of $0.48

and an average balance of $0.53 during the six months preceding the filing of this action. The Court therefore grants leave to proceed in forma pauperis and does not assess an initial partial filing fee. Plaintiff remains obligated to pay the $350.00 filing fee in installments calculated under 28 U.S.C. § 1915(b)(2), and a copy of this order will be transmitted to his present custodian with instructions to commence collection action as funds become available.

**The motion for appointment of counsel**

Plaintiff moves for the appointment of counsel. There is no constitutional right to the appointment of counsel in a civil matter. *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989). Rather, the decision whether to appoint counsel in a civil action lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The party seeking the appointment of counsel has the burden to convince the court that the claims presented have sufficient merit to warrant the appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2016)(citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the movant] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)). The Court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979.

The Court has studied the complaint and declines to appoint counsel at this time. Plaintiff is able to present his claims clearly,

and the claims do not appear to be unusually complex.

**Nature of the complaint**

Plaintiff commenced this complaint while housed in the Sumner County Detention Center (SCDC), Wellington, Kansas, pending his extradition to Oklahoma.

The complaint names the following defendants: (1) Sumner County; (2) Sheriff Derrin Chambers; (3) Sgt. Church; (4) Lt. A. Yoder; (5) Sgt. Wesley Baucom; (6) Cpl. Fairbanks; (7) Cpt. Carson; (8) Cpl. Mckaig; (9) Cpl. Schwartz; (10) Dep. Durham; (11) Dep. Kratt; (12) Dep. Warner; (13) Dep. Biddle; (14) Dep. Patterson; (15 - 18) John or Jane Does 1-4; and (19) Nurse Mandy.

The complaint asserts the following claims:

Count 1: Doe #1 endangered plaintiff by labeling him as racist and spreading that information to staff and the population of the SCDC, and Doe #2 contributed to conditions in the environment there;

Count 2: Defendants Sumner County, Chambers, Yoder, and Baucom were made aware of harm caused by Doe #2 and allowed the risk to continue; specifically, plaintiff alleges that he was assaulted and sexually abused by another inmate, Terrill Cooks, as a direct result of being labEled as a racist. He states that Cooks approached him in the SCDC day room and demanded the television remote, which plaintiff refused to hand over. Cooks then picked up a wooden broom and began to walk upstairs to where another prisoner, Arrell Farmer, was temporarily locked down due to misconduct. Farmer and Cooks began to verbally harass and threaten plaintiff with assault. Plaintiff remained in his seat in the day room for approximately four and a half hours. During that time he experienced shortness of breath, nausea, and other symptoms.

When Farmer was released from lockdown at 9 p.m., he and Cooks returned to the day room, and one or both slapped plaintiff in the face. They then attempted to force plaintiff into the shower area, but deputies interrupted this attempt and separated the inmates. Plaintiff was interviewed and placed in isolation for two hours. Farmer and Cooks were placed in another pod and placed in lockdown for 14 days. All three prisoners were changed from orange to green clothing to identify them as separatees. On the following day, plaintiff filed a grievance against Doe #2 for endangering his safety; he also filed a complaint under the Prison Rape Elimination Act, 34 U.S.C. § 30301 (PREA), in which he identified the assault as a hate crime based upon his bisexuality. Plaintiff also asked to speak with defendant Yoder. Lt. Yoder met with plaintiff on the next day and plaintiff stated his belief that he was the victim of a hate crime and his belief that staff at the SCDC had created a dangerous environment that violated PREA standards. Lt. Yoder advised plaintiff that he would investigate the plaintiff's claims. Following this, plaintiff spoke with unnamed "Patrol Deputies" and advised them that he wished to press charges against Cooks for attempted sexual assault.

Count 3: Defendant Durham endangered plaintiff's safety by leaving him alone in a hallway with Cooks while taking him to a medical appointment. Plaintiff estimates that he was alone with Cooks for two minutes. Cooks verbally threatened plaintiff. Plaintiff called defendant Durham who removed Cooks. Plaintiff filed a grievance against Durham, alleging gross negligence and stating that defendants were not enforcing PREA standards.

Count 4: Defendants Sumner County, Chambers, Yoder, and Baucom failed to protect plaintiff resulting in the assault on him. Sgt. Baucom met

with plaintiff on September 17, 2018, to discuss his grievance. Plaintiff sought an explanation for why he had not been allowed to see a sexual abuse crisis counselor. Plaintiff's grievance was rejected, and he filed a second grievance demanding to see a sexual abuse crisis counselor. On the next day, he was seen by defendant Yoder. Plaintiff complained that SCDC staff has endangered him and again asked to see a sexual abuse crisis counselor.

Count 5: Defendants Doe #3 and Baucom "opened, sequestered, molested, and then defaced" plaintiff's legal mail on two occasions.

Count 6: Defendants Nurse Mandy and Doe #4 denied plaintiff access to emergency mental health services. Plaintiff sought mental health services on October 11, 2018, and was seen by defendant Mandy. After discussing the nature of his complaint, defendant Mandy sent plaintiff back to his housing area.

Count 7: Defendants Sumner County, Chambers, Baucom, Carson Schwartz, Fairbanks, Warner, and Kratt violated by plaintiff's right to be protected from retaliation, subjected him to cruel and unusual punishment, and denied him due process. Plaintiff met with defendants Schwartz and Yoder and discussed his claims concerning the processing of his legal mail. Plaintiff also complained that defendants had conspired to present his exhaustion of remedies and had failed to address his concerns of emotional duress and related physical symptoms.

Count 8: Defendants Doe #1, Sumner County, Chambers, Yoder, and Church victimized plaintiff sexually and subjected him to voyeurism.

Count 9: Defendants Sumner County "et al" retaliated against plaintiff. The SCDC has a closed circuit camera that is installed in each cell in the facility. Plaintiff complains that upon his entry

at the SCDC he was not informed of PREA compliance policies and was not advised of monitoring by the camera system that would subject him to cross-gender viewing of him by staff.

On two occasions in 2017, plaintiff witnessed altercations between inmates that left blood in the pod. Plaintiff asked that the area be cleaned, and then asked for supplies to allow him to clean the area.

Plaintiff submitted a PREA complaint on the SCDC kiosk system in August 2018. Shortly afterward, he was placed in a segregation cell and held there for approximately two hours in shackles. He met with defendant Church and presented his complaints.

In October 2018, plaintiff saw Sumner County mental health services. That counselor diagnosed plaintiff with post traumatic stress disorder and advised plaintiff that he was ordering medication. Plaintiff did not receive the medication or the follow-up by a nurse that he was told was forthcoming.

In November 2018, defendants Sumner County "et al." engaged in retaliation. Plaintiff was shown an e-mail from the district attorney to his criminal defense attorney that advised him that additional charges were contemplated because plaintiff was causing problems in the jail. Plaintiff then agreed to withdraw his mandamus petition that sought a court-ordered investigation into the details of his grievances. In return, the district attorney dropped the felony charges against him and allowed him to plead to a misdemeanor.

In November 2018, plaintiff used another prisoner's pin code to make a PREA report to the State of Oklahoma hotline. He spoke with a counselor. On the same day, he filed a PREA complaint demanding to see a rape crisis counselor and a PREA compliance officer. Plaintiff

claims that as a result of his call to the Oklahoma crisis line, he was placed in isolation although he protested that he did not want to be segregated. To avoid that placement, plaintiff entered the housing pod and tied the pod door shut. He stated he was afraid of staff and would lock down in his cell. He then released the door. Defendants Patterson, Biddle, Kratt, Pottgeiter[1], and McKaig entered the pod with tasers and chased plaintiff into his cell. Plaintiff continued to protect the move to segregation, and defendants Patterson and Kratt ordered him to move. Plaintiff was placed in handcuffs and placed in a dry cell for approximately six hours.

After approximately two hours, plaintiff was placed in restraints and escorted by two officers to an interrogation room to meet with defendant Church. Plaintiff asked to speak with an outside reporting agency, but that request was denied. Defendant Church then asked plaintiff if he had been sexually assaulted, and plaintiff said yes but it concerned SCDC officers and repeated that he wished to speak with an outside agency as provided by the PREA. Defendant Church refused to contact an outside agency or allow plaintiff to do so. Defendant Church left the interview room; plaintiff remained there for another half hour and then was placed in an administrative segregation cell. Plaintiff remained there for 14 days. Plaintiff describes the acts of defendants Sumner County, Chambers, and Church as "possible widespread systematic intentional fraud", claiming they have failed to follow the practices and standards of the PREA. He specifically cites the failure of defendant Church to investigate the assault of August 17, 2018, for months; the denial of sexual abuse

---

[1] Officer Pottgeiter is not identified as a defendant in the caption or elsewhere in the complaint.

crisis counseling or medical treatment; the failure to report the actions of Cooks to the courts; the failure to notify authorities and prosecutors of the attempted rape until November; refusing to allow plaintiff to speak with an outside agency concerning the use of closed circuit cameras to monitor prisoners in the SCDC; refusing to investigate plaintiff's claims of sexual abuse by Doe #1; and "treating the plaintiff like an assailant and not the assailed." Plaintiff describes the use of cameras in the jail as voyeurism and a human rights violation.

Plaintiff alleges that defendant Sumner County "et al" were aware of his diagnosis of PTSD and maliciously subjected him to cruel and unusual punishment. He cites an e-mail sent by the district attorney stating that the plaintiff was causing problems at the SCDC, the use of cameras, and his placement into administrative segregation near a door that slammed repeatedly through the day and night. Plaintiff also complains of delays in obtaining the financial statement needed to support his application to proceed in forma pauperis in this action. Count 10. Citing the Kansas Tort Claims Act, plaintiff "adopts by reference the entire complaint and incidents of negligence previously mentioned." He claims that defendants Sumner County "et al." departed from established correctional standards, citing the failure to train staff in PREA standards.

As relief, plaintiff seeks damages and declaratory and injunctive relief, including an investigation.

## Screening

A federal court must conduct a preliminary review of any case in which a prisoner seeks relief against a governmental entity or an officer or employee of such an entity. *See* 28 U.S.C. §1915A(a).

Following this review, the court must dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from that relief. *See* 28 U.S.C. § 1915A(b).

In screening, a court liberally construes pleadings filed by a party proceeding pro se and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

"To state a claim for relief under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988)(citations omitted).

To avoid a dismissal for failure to state a claim, a complaint must set out factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts the well-pleaded allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Id*. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the matter should be dismissed. *Id*. at 558. A court need not accept "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E.*

*Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Tenth Circuit has observed that the U.S. Supreme Court's decisions in *Twombly* and *Erickson* set out a new standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) dismissals. *See Key v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted). Following those decisions, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (quotation marks and internal citations omitted). A plaintiff "must nudge his claims across the line from conceivable to plausible." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In this context, "plausible" refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct much of it innocent," then the plaintiff has not "nudged [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (citing *Twombly* at 1974).

**Discussion**

The Court has carefully reviewed plaintiff's complaint and has identified several deficiencies.

*Compliance with the Federal Rules of Civil Procedure*

First, the complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. A civil complaint has two purposes: first, it provides opposing parties fair notice of the claims against them and allows them to respond; second, it provides sufficient information to allow the Court to determine whether the claims, if proven, would entitle the plaintiff to relief. *See Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.3d 1473, 1480 (10th Cir. 1989). Under Rule 8(a), the complaint "must contain

(1) a short and plain statement of the grounds for the court's jurisdiction, ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Rule 8(d)(1) requires that "[e]ach allegation must be simple, concise, and direct."

Likewise, plaintiff must comply with Rules 18 and 20 of the Federal Rules of Civil Procedure.

Rule 18(a) governs joinder of claims and provides, in part: "A party asserting a claim ... may join ... as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged to promote judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F.Supp. 2d 1210, 1225 (D. Kan. 2001)(citation omitted). *See also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)(Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence to the federal rules on joinder of parties and claims in prisoner suits prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents a prisoner from avoiding the fee obligations and the three-strike provision of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or

appeals that any prisoner may file without prepayment of the required fees.").

Rule 20 governs the permissive joinder of parties and provides, in relevant part:

> (2) Defendants. Persons ... may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Under Rule 20(a)(2), plaintiff may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. But he may not bring multiple claims against multiple defendants unless the nexus required in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

Because the plaintiff's complaint asserts a number of seemingly unrelated claims against different defendants, including claims concerning access to mental health care, interference with legal mail, failure to address grievances, sanitation, and retaliation, plaintiff will be directed to submit an amended complaint that presents only properly joined claims and defendants.

*Supervisory liability*

Likewise, plaintiff may not rely on bald claims of supervisory liability. Section 1983 does not allow liability to be imposed on a theory of respondeat superior. *See Monell v. Dep't of Soc. Serv.*, 436

U.S. 658, 692 (1978). Instead, plaintiff may proceed on a theory of supervisory liability, which "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements … a policy the enforcement … of which subjects or causes to be subjected that plaintiff to the deprivation of rights … secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). To present a claim of supervisory liability, plaintiff must allege direct, personal responsibility, an affirmative link between the supervisor and the alleged constitutional violations, and the necessary state of mind. *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016). "[I]t is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity … that the complaint make clear exactly who is alleged to have done what to whom... as distinguished from collective allegations." *Id*. (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Accordingly, to the extent that plaintiff relies on claims that identify the defendants as "Sumner County et al." he fails to sufficiently allege a claim of supervisory authority and must amend those claims to comply with this standard.

*The injury requirement*

Next, the Prison Litigation Reform Act (PLRA) provides in part that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C.

§1997e(e).

Because plaintiff's claim alleging that staff did not immediately clean or provide cleaning supplies after the altercations between other inmates does not allege that he suffered any injury as a result, he does not state a ground for relief.

### *Interference with legal mail*

Likewise, plaintiff's claim that two items of legal mail were opened outside his presence must be supported by a claim of actual injury. *Harmon v. Keith*, 2010 WL 143708, at *2 (E.D. Okla. Jan. 11, 2010). He may satisfy this showing by establishing that the opening of his mail "resulted in 'actual injury' by 'frustrat[ing]', 'imped[ing]', or 'hinder[ing] his efforts to pursue a legal claim.'" *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005).'" The Supreme Court has explained that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Plaintiff has not yet pled that he suffered any prejudice in the pursuit of his legal claims caused by the opening of two items outside his presence.

### *Use of cameras*

Plaintiff broadly asserts that he was subjected to "cross-gender voyeurism" due to the presence of cameras in the jail. The Tenth Circuit has recognized only a limited right to privacy in the context of prison life. *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995). Plaintiff's claim must be balanced against the use of cameras to further institutional security, which is "central to all other

correctional goals." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). At this point, because the complaint contains only a vague claim that plaintiff, like all prisoners, is subject to viewing by staff, he has not sufficiently pled a claim of unconstitutional conduct. *See, e.g., Garrett v. Thaler*, 560F. App'x 375, 380-81 (5th Cir. 2014)(affirming decision that cameras in restroom, showers, and dressing areas in state prison did not violate the Fourth Amendment); *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995)(monitoring of nude prisoner in showers, toilets, or undressing held constitutional in light of institutional security needs).

*Grievance procedure*

Plaintiff's complaints concerning the processing or mishandling of his grievances fail to state a claim for relief. The Tenth Circuit has held that "there is no independent constitutional right to state administrative grievance procedures." *Gray v. Geo Grp., Inc.*, 727 Fed. Appx. 940, 948 (10th Cir. 2018); *Burnett v. Allbaugh*, 715 Fed. Appx. 848, 852 (10th Cir. 2017).

*Request for declaratory and injunctive relief*

Plaintiff's requests for declaratory and injunctive relief are moot due to his transfer from the SCDC. *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997).

**Conclusion**

For the reasons set forth, the Court directs plaintiff to file an amended complaint that complies with the Federal Rules of Civil Procedure. An amended complaint is not an addendum or supplement to

the original complaint but completely supersedes it. Therefore, any claims or allegations not presented in the amended complaint are no longer before the Court. Plaintiff may not simply refer to an earlier pleading; instead, the complaint must contain all allegations and claims that plaintiff intends to present in the action, including those to be retained from the original complaint. Plaintiff must include the case number of this action on the first page of the amended complaint.

Plaintiff must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). He must refer to each defendant in the body of the complaint and must allege specific facts that the describe the allegedly unconstitutional acts or omissions by each defendant, including dates, locations, and circumstances.

IT IS, THEREFORE, BY THE COURT ORDERED plaintiff's motion to proceed in forma pauperis (Doc. 2) is granted. Plaintiff remains obligated to pay the $350.00 filing fee in installments calculated under 28 U.S.C. § 1915(b)(2). The clerk of the court shall transmit a copy of this order to plaintiff's present custodian so that collection action may commence as funds become available.

IT IS FURTHER ORDERED plaintiff's motion to appoint counsel (Doc. 3) is denied.

IT IS FURTHER ORDERED plaintiff's motion for hearing on his motion to appoint counsel and motion for leave to proceed in forma pauperis (Doc. 6) is denied.

IT IS FURTHER ORDERED that on or before **October 11, 2019**, plaintiff shall submit an amended complaint. The failure to file a

timely response may result in the dismissal of this matter without additional prior notice.

**IT IS SO ORDERED.**

DATED:  This 11th day of September, 2019, at Topeka, Kansas.


                                                    S/ Sam A. Crow
                                                    SAM A. CROW
                                                    U.S. Senior District Judge