```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

**LOGAN EUGENE ROWE,**

                                           **Plaintiff,**

         **v.**                                                    CASE NO. 19-3024-SAC

**(FNU) CHURCH, et al.,**

                                           **Defendants.**

<u>**MEMORANDUM AND ORDER TO SHOW CAUSE**</u>

This matter comes before the Court upon Plaintiff's pro se amended complaint filed under 42 U.S.C. § 1983 and the report filed by the Sheriff of Sumner County pursuant to the Court's order of March 30, 2021 and *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has not filed a reply to the *Martinez* report, and the time to do so has passed. The Court has screened the amended complaint as required by 28 U.S.C. § 1915A(a). The Court directs Plaintiff to show cause why this matter should not be dismissed due to the deficiencies in the amended complaint discussed herein. The failure to file a timely response may result in the dismissal of this matter without prior notice to Plaintiff.

**I.  Nature of the Matter before the Court**

Plaintiff commenced this action while housed in the Sumner County Detention Center (SCDC), in Wellington, Kansas, pending his extradition to Oklahoma. In his amended complaint, he names the following Defendants: Lieutenant A. Yoder, Sergeant Wesley Baucom,

Sergeant Church, and John or Jane Doe 1. (Doc. 8, p. 1.) Plaintiff sues Defendants in their individual capacities only. *Id.* at 1-3.

As Count I of his amended complaint, Plaintiff claims that Defendant Doe violated his rights as a pretrial detainee under the Fourteenth Amendment to the United States Constitution by spreading an unfounded rumor at SCDC that Plaintiff is racist. *Id.* at 8-9. In support[1], Plaintiff alleges that on August 1, 2018, Defendant Doe asked black inmate Terrill Cooks through a speaker in Cooks' cell if he "'would be willing to work in the kitchen with [Plaintiff] even though [Plaintiff] doesn't like blacks.'" *Id.* at 8, 12.

Plaintiff asserts that Defendant Doe's question to Cooks violated Plaintiff's Fourteenth Amendment rights because it amounted to deliberate indifference to the substantial risk of serious harm Plaintiff would face for being labeled racist. *Id.* at 8-9. Plaintiff further alleges that Defendant Doe labeling him racist caused Cooks to sexually abuse and assault Plaintiff, which led to Plaintiff suffering Post-Traumatic Stress Disorder (PTSD). *Id.* at 8-9, 14. The alleged assault and sexual abuse is discussed in detail below, as it is part of the basis for Count II.

As Count II, Plaintiff asserts that Defendants Baucom and Yoder also violated Plaintiff's constitutional rights by their deliberate

---

[1] The 65-page amended complaint contains many detailed factual assertions. Although the Court in this Memorandum and Order to Show Cause recites only a general overview of the facts alleged by Plaintiff, the Court thoroughly reviewed and considered the entire amended complaint, including all the alleged facts, when performing its screening duties.

2

indifference to the substantial risk of harm Plaintiff faced because Defendant Doe said Plaintiff was racist. *Id.* at 15. In support, Plaintiff alleges that at around 8:30 a.m. on August 2, 2018, he told Deputy Sheriff Bebe about Defendant Doe's comment, explained his belief that it put him at risk of harm, and asked Bebe to inform his supervisors so they could protect Plaintiff. *Id.* at 13. At 1:00 p.m. the same day, Bebe told Plaintiff he had told Defendants Baucom and Yoder and they said they would investigate it. *Id.* Plaintiff asserts that Defendants Baucom and Yoder, however, "chose, intentionally and willfully, to take no action at all" and their failure to act and protect him led to the events of August 17, 2018. *Id.* at 15-16.

On that day, Plaintiff alleges that he was watching television in the day room when Cooks approached and demanded the remote control. *Id.* When Plaintiff refused to give Cooks the remote, Cooks picked up a broom and threatened Plaintiff, calling him, among other things, a racist. *Id.* Cooks also told Plaintiff in explicit terms that he and fellow inmate Arrell Farmer, who was on disciplinary lockdown but whose door faced onto the dayroom, were going to rape Plaintiff with the broom. *Id.* at 16-17. Cook and Farmer then sexually harassed and threatened Plaintiff for over four hours. *Id.* at 17. Plaintiff remained in the dayroom but experienced anxiety and chest pains, believing he was going to be raped and fearing for his life. *Id.*

When Farmer was let into the dayroom for his hour out, he called Plaintiff names and tried to coerce Plaintiff into an off-camera area so he could rape Plaintiff. *Id.* Farmer slapped Plaintiff across his face, but then Sheriff's deputies entered the pod responding to a report from another inmate and Plaintiff was placed in a holding cell for his protection. *Id.* at 17-18. Plaintiff alleges that he suffered PTSD related to the incident, which manifested in physical symptoms and which was aggravated by repeated questioning from staff about the incident. *Id.* at 18. Plaintiff also alleges he had trouble sleeping and suffered from nightmares. *Id.* at 22.

As Count III, Plaintiff points to a different series of events in which he asserts Defendant Yoder also acted with deliberate indifference toward a substantial risk of serious harm to Plaintiff. *Id.* at 23. As supporting facts, Plaintiff alleges that after the dayroom incident described above, SDCD administrators "flagged" Plaintiff and Cooks with respect to each other, indicating that there was a potential for conflict, and they should be kept separate. *Id.* at 24. Accordingly, on September 17, 2018, when Deputy Durham discovered that Plaintiff and Cooks, who were scheduled to be pulled from their cells at the same time for medical appointments, were flagged against each other, Durham asked Defendant Yoder what to do. *Id.* at 23-24. Defendant Yoder directed Durham to go ahead and pull Plaintiff. *Id.* As a result, at

4

approximately 1:00 p.m., Durham pulled Plaintiff and placed him in a hallway, then pulled Cooks and sent him to the hallway as well. *Id.* at 25. Cooks and Plaintiff were left unsupervised, and Cooks threatened Plaintiff with rape and otherwise verbally abused him for approximately 90 seconds before Plaintiff called for Durham, who took Cooks away. *Id.* When Durham took Plaintiff back to his pod, Plaintiff suffered PTSD symptoms such as shaking, paranoia, and psychosis. *Id.* at 26-27.

As Count IV, Plaintiff alleges that Defendants Church, Baucom and Yoder violated multiple provisions of the Prison Rape Elimination Act (PREA). *Id.* at 33. Plaintiff also contends that these Defendants denied him access to mental health services, which showed "their deliberate indifference to the risk for further injury to Plaintiff" and thus violated Plaintiff's rights under the Fourteenth Amendment *Id.* at 34. As supporting facts, Plaintiff alleges specific dates upon which he requested mental health services and was denied. *Id.* at 36-46. When Plaintiff finally met with a mental health professional on October 31, 2018, the professional diagnosed him with PTSD and prescribed medication that Plaintiff did not receive. *Id.* at 48.

As Count V, Plaintiff alleges that Defendants Yoder and Church unconstitutionally retaliated against him in violation of the First and Fourteenth Amendments by taking "actions that were intended to deter the Plaintiff from engaging in a protected activity,"

5

presumably his pursuit of his complaints under the PREA. *Id.* at 49. As supporting facts for this count, Plaintiff recites definitions and requirements in the PREA and asserts that Defendants Yoder and Church did not comply with the PREA or ensure that their subordinates did so. *Id.* at 50-54. As an example of retaliation for filing a PREA complaint, Plaintiff alleges that Defendant Yoder informed the prosecuting attorney on Plaintiff's criminal case that Plaintiff was causing problems at SCDC. *Id.* at 54-55.

Plaintiff also alleges that on November 2, 2018, after a third-party reminded SCDC staff of Plaintiff's rights under the PREA and after Plaintiff filed a PREA complaint, SCDC staff, "using Tasers and force," took Plaintiff to administrative segregation on orders from Defendant Yoder. *Id.* at 55-56, 60. Plaintiff then was fully shackled and taken to an interview room where Defendant Church refused Plaintiff's request to call a PREA reporting hotline and see a crisis counselor. *Id.* at 57-58. Plaintiff was returned to isolation, but he was denied reading materials for 14 days. *Id.*

As Count VI, Plaintiff alleges a claim of negligence under the Kansas Tort Claims Act (KTCA) for Defendants Yoder and Church's failure to conform with the PREA. *Id.* at 61.

In his request for relief, Plaintiff seeks declaratory and injunctive relief; nominal, compensatory, punitive, actual, and exemplary damages; attorney's fees, and any other relief the Court deems just and proper. *Id.* at 63-65.

## II. Screening Standards

Because Plaintiff was a prisoner at the time he filed his amended complaint, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

## III. Discussion

### A. PREA Violations

Throughout his amended complaint and particularly in Counts IV and V, Plaintiff alleges that Defendants violated the provisions and requirements of the PREA. As a matter of law, however, Plaintiff cannot sue for violation of the PREA. *See Langston v. Friend*, No. 20-3213-SAC, 2021 WL 1694321, at *5 (D. Kan. April 29, 2021)(unpublished opinion).

> "The PREA, 42 U.S.C. § 15601-15609, 'authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission,' but there is nothing in the PREA to indicate that it created a private right of action, enforceable under § 1983. *Porter v. Jennings*, No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012); *see also Burke v. Corr. Corp. of Am.*, No. 09-3068-SAC, 2010 WL 890209, at *2 (D. Kan. Mar. 10, 2010); *Moreno v. Corizon Medical Provider*, No. 16-CV-01063, 2017 WL 3052770, at *2 (D. N.M. June 21, 2017); *Moorman v. Herrington,* No. 4:08CV-P127-M, 2009 WL 2020669, at *2 (W.D. Ky. 2009)(collecting cases);

7

*De'lonta v. Clarke,* No. 7:11-cv-00483, 2013 WL 209489, at *3 (W.D. Va. Jan. 14, 2013); *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008). "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Id.* (emphasis in original)(citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)). The Court concludes that, as a matter of law, Plaintiff cannot pursue a § 1983 claim based on an alleged failure to comply with the PREA." *Id.*

**B. Kansas Tort Claims Act**

In Count VI, Plaintiff asserts a claim of "KTCA TORT of negligence" by Defendants Yoder and Church. (Doc. 1, p. 61-62.) Negligence, even by state employees, does not rise to a federal constitutional violation; as Plaintiff acknowledges, negligence arises under state law. *Id.* at 62 ("This negligent behavior . . . entitl[es] the plaintiff to [relief] under Kansas State Law."). Thus, it is not a claim that may be brought under § 1983. *See Blessing*, 520 U.S. at 340; *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) (rejecting a claim of negligence in a § 1983 case, noting that "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required"); *Daniels v. Williams*, 474 U.S. 327, 330 (1986).

### C. Relief Sought

#### 1. Damages

The Prison Litigation Reform Act (PLRA) provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). That this provision of the PLRA "limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). Simply put, without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages. *Id.* at 878. Nominal and punitive damages, however, are not barred. *Id.* at 879.

In this context, "sexual act" requires genital contact or penetration. *See* 42 U.S.C. § 1997e(e); 18 U.S.C. § 2246(2). Although Plaintiff alleges that he was threatened with sexual acts, he does not allege that a sexual act occurred.

The PLRA does not define "physical injury." Moreover, the only injuries Plaintiff alleges are PTSD and the physical manifestations of PTSD. Physical manifestations of mental injuries do not satisfy the "physical injury" requirement of the PLRA. *See White v. United States*, No. CIV-20-141-HE, 2020 WL 6834206, at *4 (W.D. Okla. 2020) (unpublished) (collecting cases).

### 2. Injunctive Relief

Plaintiff also seeks injunctive relief. (Doc. 8, p. 63-65.) In the amended complaint, however, Plaintiff asserts that he is suing the Defendants in their individual capacities only. *Id.* at 1-3. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)). Thus, Plaintiff may not seek injunctive relief against Defendants.

### D. Failure to State a Claim

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's

10

"conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

The decisions in *Twombly* and *Erickson* created a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Under this new standard, courts determine whether a plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *Smith*, 561 F.3d at 1098 (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)(citing *Twombly*, at 550 U.S. at 570).

### 1. Deliberate Indifference (Counts I, II, III)

Under the Due Process Clause of the Fourteenth Amendment, jail personnel must provide pretrial detainees with adequate clothing, shelter, and safety. *See, e.g., Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (stating that "[p]retrial detainees are

11

protected under the Due Process Clause rather than the Eighth Amendment," but courts "apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983"). Plaintiff's claims are largely based on the theory that Defendants were deliberately indifferent to the substantial risk of harm he faced. The "deliberate indifference" standard has both objective and subjective components. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

A prisoner satisfies the objective component by alleging facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner satisfies the subjective component by showing that the defendant acted with a "sufficiently culpable state of mind." *Id.* at 834. The prisoner must show that the defendant knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exist, and he must also draw the inference." *Id.* at 837. It is not enough to assert that the official should have known of the risk of harm. *Id.*

### Count I

Count I asserts that Defendant Doe demonstrated unconstitutional deliberate indifference to the substantial risk of serious harm to Plaintiff that would occur if he told Cooks that Plaintiff was racist. Plaintiff asserts that Defendant Doe was aware

12

of the risk of serious harm "[e]ither through training or through a generally understood public awareness." (Doc. 8, p. 8.) It is insufficient to assert that Defendant Doe should have known of the risk of harm. Plaintiff must allege facts that plausibly show Defendant Doe was aware of facts from which the inference could be drawn that his actions could place Plaintiff at substantial risk of serious harm and Plaintiff must allege facts that plausibly show Defendant Doe drew that inference. *See Farmer*, 511 U.S. at 837. He has not. Even taking all allegations in the Complaint as true, Plaintiff has not alleged sufficient facts to state a plausible claim against Defendant Doe.

## Count II

Count II alleges that Defendants Baucom and Yoder demonstrated similar unconstitutional deliberate indifference to the substantial risk of serious harm Plaintiff faced after Defendant Doe told Cooks that Plaintiff was racist. Plaintiff contends that this deliberate indifference resulted in Cooks and Farmer sexually abusing and assaulting Plaintiff in the dayroom incident.

Even taking all the facts alleged in the complaint as true, Plaintiff has not stated a plausible claim that Defendants Baucom and Yoder were deliberately indifferent to an unconstitutional level. He makes only conclusory allegations that Defendants Baucom and Yoder knew of the risk of harm and chose to do nothing. Additionally, the facts alleged do not establish that Plaintiff

13

endured conditions that "pos[ed] a substantial risk of serious harm."

Finally, the complaint does not allege facts that plausibly establish that Cooks and Farmer's actions in the dayroom were related to Defendant Doe's question to Cooks or a resulting belief that Plaintiff was racist. Although Cooks may have called Plaintiff a racist during the exchange, it appears that the disagreement was over the remote control.

## Count III

Count III involves the hallway incident when Plaintiff and Cooks briefly were left alone and unsupervised after being pulled for medical appointments. Even taking all the allegations in the complaint as true, Plaintiff has not alleged a plausible constitutional claim for deliberate indifference. Although the allegations show that Defendant Yoder was aware of the flag, Plaintiff explains that "[t]he flagging system is used by SCDC to keep potentially adverse inmates separated and used to make deputies aware of the potential for conflict between 'flagged' inmates." (Doc. 8, p. 24.) Thus, a flag in and of itself does not appear to meet the objective prong of the deliberate indifference test: that Plaintiff, by being alone in a hallway with Cooks, would face "conditions posing a substantial risk of serious harm." *See Farmer*, 511 U.S. at 834.

14

Further, Plaintiff's allegations that Defendant Yoder disregarded "an excessive risk to [Plaintiff's] health or safety," *see id.* at 837, are merely conclusory. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. And although Plaintiff and Cooks were left unsupervised, the result was that Cooks threatened Plaintiff verbally for approximately 90 seconds, which does not rise to the level of serious harm.

### 2. Denial of Access to Mental Health Care (Count IV)

As already set forth above, to the extent that Count IV is based on alleged violations of the PREA, it fails to state a claim actionable under § 1983. Construing the complaint liberally, as is proper since Plaintiff is pro se, however, Count IV can also be read to assert a claim that Defendants Church, Baucom, and Yoder denied him access to mental health services. (Doc. 8, p. 34.) The facts alleged in support of this count, though broad-ranging, do not allege specific dates and times that each specific defendant denied Plaintiff's requests for mental health services. Rather, the amended complaint, with respect to Count IV, sets forth specific dates on which mental health services requests were denied by "the defendants" with no distinction as to what acts are attributable to whom. (*See* Doc. 8, p.37-37.)

15

This generalization makes it "impossible for any of these individuals" as well as the court "to ascertan what particular unconstitutional acts" each is alleged to have committed. See *Robbins*, 519 F.3d at 1250. Plaintiff fails to clearly "isolate the allegedly unconstitutional acts of each defendant." *Twombly*, 550 U.S. at 565, n. 10. Thus, he does not state a plausible claim of retaliation against the named defendants.

### 3. Retaliation (Count V)

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'" *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 Fed.Appx. 845, 848 (10th Cir.2001)(citations omitted); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.

16

1999)("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

In Count V, Plaintiff alleges that Defendants Yoder and Church engaged in actions that retaliated against him for filing PREA complaints. (Doc. 8, p. 49.) But Plaintiff fails to allege facts that, even taken as true, establish a plausible claim for retaliation. He does not allege specific facts that demonstrate more than his personal belief that Defendants would not have taken the actions but for a retaliatory motive. Thus, he has failed to allege a plausible claim for unconstitutional retaliation.

## IV. Response Required

For the reasons stated herein, it appears that this action is subject to dismissal in its entirety.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including August 30, 2021, to show cause, in writing, why this matter should not be dismissed without prejudice for the reasons stated above. The failure to file a timely response may result in the dismissal of this matter without prior notice to Plaintiff.

**IT IS SO ORDERED.**

DATED:  This 28th day of July, 2021, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge