**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**LOGAN EUGENE ROWE,**

                      **Plaintiff,**

      v.                                                       **CASE NO. 19-3024-SAC**

**(FNU) CHURCH, et al.,**

                      **Defendants.**

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Plaintiff's response to the Court's Memorandum and Order to Show Cause (MOSC) issued July 28, 2021. For the reasons set forth below, the Court will dismiss the matter without prejudice for failure to state a claim upon which relief can be granted.

**I.  Nature of the Matter before the Court**

Plaintiff commenced this action while housed in the Sumner County Detention Center (SCDC), in Wellington, Kansas, pending his extradition to Oklahoma. As Count I of his amended complaint, Plaintiff claims that Defendant Doe violated his constitutional rights by spreading an unfounded rumor at SCDC that Plaintiff is racist. *Id.* at 8-9. As Count II, Plaintiff asserts that Defendants Baucom and Yoder violated his constitutional rights by their deliberate indifference to the substantial risk of harm Plaintiff faced because of the rumor. *Id.* at 15. As Count III, Plaintiff asserts Defendant Yoder acted with deliberate indifference toward

1

a substantial risk of serious harm to Plaintiff when Defendant Yoder allowed Plaintiff and inmate Cooks to be placed in a hallway together despite knowing that SDCD administrators had "flagged" Plaintiff and Cooks with respect to each other. As Count IV, Plaintiff alleges that Defendants Church, Baucom, and Yoder demonstrated deliberate indifference to the risk of further injury to Plaintiff, as shown by their failure to comply with the Prison Rape Elimination Act (PREA).[1] *Id.* at 33-34.

As Count V, Plaintiff alleges that Defendants Yoder and Church unconstitutionally retaliated against him by taking "actions that were intended to deter the Plaintiff from engaging in a protected activity," presumably his pursuit of his complaints under the PREA. *Id.* at 49. As Count VI, Plaintiff alleges a claim of negligence under the Kansas Tort Claims Act (KTCA). *Id.* at 61. Plaintiff seeks declaratory and injunctive relief, money damages, attorney's fees, and any other relief the Court deems proper. *Id.* at 63-65.

Because Plaintiff was a prisoner at the time he filed his amended complaint, the Court was required by statute to screen his complaint and must dismiss the complaint or any portion thereof

---

[1] The petition left the basis for Count IV unclear, so the Court construed Count IV as alleging a claim based on violations of the PREA. (Doc. 19, p. 5.) Plaintiff clarifies Count IV in his response and asserts that "[h]is use of the language of the PREA was proof objectively and subjectively that the defendants were aware of in detail, specifically without mere abstract conclusions of the substantial risk for harm the numerous claims and multiple complicated events caused. The Plaintiff used the PREA language and reference to show further that the defendants knew they were liable and could not attempt to claim qualified immunity." (Doc. 20, p. 4.)

that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). After conducting the initial screening, the Court issued the MOSC directing Plaintiff to show cause, in writing, why this matter should not be dismissed without prejudice.[2] (Doc. 19.) Plaintiff timely filed a response. (Doc. 20.)

**II. Discussion**

As a preliminary matter, the Court will respond to Plaintiff's "object[ion to] this Court's use of the *Martinez* report to essentially respond with an order that appears to him to be essentially a Summary Judgment [order] written by the Court on behalf of the defendants." (Doc. 20, p. 2.) The Court agrees that if it had before it a motion to dismiss for failure to state a claim, the Court could not consider the *Martinez* report without converting the motion to dismiss into one for summary judgment. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But at the current stage in the proceedings, the Court is screening the complaint as required by 28 U.S.C. § 1915A(a) and (b). The Tenth Circuit has repeatedly approved use of a *Martinez* report to aid in such screening. *See, e.g., Rachel v. Troutt*, 820 F.3d 390, 396 (10th

---

[2] Plaintiff has suggested that the MOSC was "written for another individual's Complaint" and that it "does not make sense" when applied to his submitted complaint. (Doc. 20, p. 102.) The Court assures Plaintiff that the MOSC is directed to the amended complaint in this case, which Plaintiff filed on October 15, 2019 and which is the controlling complaint in this action.

3

Cir. 2016); *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The Court recognizes that it "may not make credibility determinations solely from conflicting affidavits." *Id.* The Court assures Plaintiff it did not improperly utilize the *Martinez* report in screening this case, nor did it resolve any factual conflicts in Defendants' favor. Any concern that the Court "has taken the statements of the defendants as true and the Plaintiff's as false" is unnecessary. (See Doc. 20, p. 2.)

### A. PREA CLAIMS

In the MOSC, the Court noted that as a matter of law, Plaintiff cannot sue for violation of the PREA. *See Langston v. Friend*, No. 20-3213-SAC, 2021 WL 1694321, at *5 (D. Kan. April 29, 2021) (unpublished opinion). Plaintiff has now clarified for the Court that he did not intend to assert a claim under the PREA. (Doc. 20, p. 3-4.) Rather, he intended to assert "that his constitutional right to Due Process of Law and the Prohibition on Cruel and Unusual Punishment had been deprived and violated . . . ." *Id.* at 2. Since Plaintiff has clarified the amended complaint, the availability of PREA claims as a private cause of action is now irrelevant.

### B. Kansas Tort Claims Act

The MOSC noted that Plaintiff's state-law-based claim of negligence in Count VI is not a claim that may be brought under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347 (1986). In his response, Plaintiff has not provided any substantive argument why

4

his KTCA negligence claim should not be dismissed. Thus, the Court will dismiss Count VI.

### C. Relief Sought

The precise nature of the relief Plaintiff seeks is difficult to discern from the amended complaint. In the portion of the complaint form for Plaintiff to identify the relief to which he believes he is entitled, he states, "See attachment D." (Doc. 8, p. 6.) Attachment D includes requests for declaratory relief, injunctive relief, money damages;,the removal of cameras at the SCDC, and the initiation of an investigation into allegations about noncompliance with PREA requirements, embezzlement, "staff-on-inmate Voyeurism and cross gender viewing," and the recording of inmates "performing bodily functions" or of nude inmates. (Doc. 8, p. 63-65.)

#### Injunctive and Declaratory Relief

As the MOSC noted, Plaintiff is suing the Defendants in their individual capacities only and, as such, may seek "only . . . money damages." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)). In his response, Plaintiff makes no substantive argument to the contrary. In addition, because Plaintiff is no longer incarcerated at SCDC, his claims for declaratory and injunctive relief against SCDC officials are moot. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th

Cir. 2010); *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1259 (D. Kan. 1999).[3]

## Compensatory Damages

Plaintiff also seeks money damages. The MOSC noted that under the Prison Litigation Reform Act (PLRA), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Tenth Circuit has held that without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). In this context, "sexual act" requires genital contact or penetration. *See* 42 U.S.C. § 1997e(e); 18 U.S.C. § 2246(2). Plaintiff alleges that he was threatened with sexual acts, but he does not allege that a sexual act occurred; the only injuries Plaintiff alleges are PTSD and the physical manifestations thereof[4], which do not satisfy the "physical injury" requirement of the PLRA.

---

[3] The Court also notes that in the alternative, it would dismiss the requests for injunctive relief that are unrelated to the claims in the amended complaint, such as the request for orders related to cameras at SCDC and embezzlement. Although these requests for relief may have related to claims made in Plaintiff's original complaint, the Court has previously cautioned Plaintiff that "[a]n amended complaint is not an addendum or supplement to the original complaint but completely supersedes it. Therefore, any claims or allegations not presented in the amended complaint are no longer before the Court." (*See* Doc. 7, p. 15-16.)

[4] *See e.g.* Doc. 8, p. 34 (asserting that the actions/inaction underlying Count 4 "forc[ed Plaintiff] to internalize drastic and manic mental states and to experience emotional distress that was a result of the deprivations in count 1 and 2 and 3"); p. 38 (asserting that the alleged events "caused the Plaintiff to suffer the symptoms of P.T.S.D constantly").

In his response, Plaintiff asserts that in his original complaint and his amended complaint, he "cited 10th Circuit case law that ruled that For a Plaintiff to meet a Requirement of more than [de minimis] Physical injury, A diagnosis of PTSD arising out of the circumstances in the Complaint, are beyond [de minimis] and Permanent and Debilitating."[5] (Doc. 20, p. 5.) The Court has carefully reviewed the 65-page amended complaint and although Plaintiff repeatedly asserts therein that the Tenth Circuit "has ruled" that PTSD is more than a de minimis injury, the amended complaint contains no citation to legal authority that supports this assertion or ties it to the PLRA. Nor has the Court's independent research revealed any Tenth Circuit case that holds a diagnosis of PTSD is sufficient to meet the requirement that a prisoner plaintiff must show "physical injury or the commission of a sexual act" to obtain compensatory damages. Thus, Plaintiff's request for compensatory damages is barred by § 1997e(e).

**D. Failure to State a Claim**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

---

[5] In this portion of his response, the Plaintiff "asks this Court to address [a] Constitutional Question" regarding the constitutionality of 42 U.S.C. 1997e(e) and whether the United States Supreme Court should rule that PTSD is an injury for which prisoner plaintiffs may obtain compensatory damages. The constitutionality of § 1997e(e) is not squarely before this Court and the Court will decline to opine on future actions of the United States Supreme Court. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 290, 2203 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes . . . [a]nd federal courts do not issue advisory opinions.").

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)(citations omitted). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### A. Deliberate Indifference (Counts I, II, III)

"The constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'
"In particular, . . . 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)(citations omitted).

8

"To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.' In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* at 834. The "deliberate indifference" standard has both objective and subjective components. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). A prisoner satisfies the objective component by alleging facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A prisoner satisfies the subjective component by showing that the defendant acted with a "sufficiently culpable state of mind." *Id.* at 834. The prisoner must show that the defendant knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exist, and he must also draw the inference." *Id.* at 837. It is not enough to assert that the official should have known of the risk of harm. *Id.*

### 1. Count I

In Count I, Plaintiff asserts that Defendant Doe was aware of the substantial risk of serious harm to Plaintiff if Defendant Doe told Cooks that Plaintiff was racist "[e]ither through training or through a generally understood public awareness." (Doc. 8, p. 8.) The MOSC concluded that it is insufficient to assert that Defendant Doe should have known of the risk of harm. Because the amended

9

complaint does not allege facts that plausibly show Defendant Doe was aware of facts from which he could draw the inference that his actions could place Plaintiff at substantial risk of serious harm and the amended complaint does not allege facts that plausibly show Defendant Doe drew that inference, the MOSC concluded that Count I should be dismissed. *See Farmer*, 511 U.S. at 837.

Plaintiff responds that "as a Jail professional," Defendant Doe was "responsible in their office for knowing the dynamics of prison and jail environments." (Doc. 20, p. 7.) Plaintiff also asserts that in the MOSC "the Court failed to acknowledge the Plaintiff's statement that discovery will show that the officers are specifically aware that race conflict is one of the top security threats. And is taught about this." *Id.* It appears that Plaintiff is referring to his assertion in the complaint that

> "Upon information and belief, the [SCDC's] training program, like similar facilities will show upon discover. That it educates new employees to the nature of confinement, risks to health and safety, how to deal with inmates, and how to handle potentially dangerous situations further between the PREA and the training of Sumner County Sherriff's office. It will be shown that the defendant was fully aware of the risk a rumor about the Plaintiff had the potential of creating." (Doc. 8, p. 10.)

Even taking this as sufficient to plead allegations that show a plausible claim that meets the objective prong of the deliberate indifference test, Plaintiff has failed to sufficiently plead facts that plausibly support the subjective prong of the test. *See Farmer*, 511 U.S. at 837. The amended complaint does not allege facts that

10

support a plausible conclusion that Defendant Doe actually drew the inference that informing another inmate that Plaintiff was racist could place Plaintiff at substantial risk of serious harm. Thus, Count I will be dismissed.

### 2. Count II

As to Count II, the MOSC concluded that even taking all the facts alleged in the complaint as true, Plaintiff has not stated a plausible claim that Defendants Baucom and Yoder were deliberately indifferent to an unconstitutional level. Plaintiff makes only conclusory allegations that Defendants Baucom and Yoder knew of the risk of harm to Plaintiff and chose to do nothing. Additionally, the facts alleged do not establish that Plaintiff endured conditions that "pos[ed] a substantial risk of serious harm" because of this choice. Finally, the complaint does not allege facts that plausibly establish that Cooks and Farmer's actions in the dayroom resulted from a belief that Plaintiff was racist. Although Cooks may have called Plaintiff a racist during the exchange, it appears that the disagreement was over the remote control.

In his response, Plaintiff states that in the amended complaint, he "made clear that the friendly relationship before Cooks was told by Doe he was Racist, he made clear the change and Sudden Violence and the sexual abuse and attempted assault." (Doc. 20, p. 8.) Plaintiff also asserts that the "Court, based upon the Martinez report, appears to be taking the position that the Conflict

11

was over a television remote. The Plaintiff's complaint stated it was factually over the tension created by the Spreading of the Rumor and the label As a Racist." *Id.*

The Court has reviewed the portion of the amended complaint dedicated to Count II. (Doc. 8, p. 15-22.) Therein, Plaintiff alleged that on August 2, 2018, Deputy Bebe informed Defendants Baucom and Yoder that Plaintiff was worried he was at substantial risk of harm because of Defendant Doe spreading the rumor that Plaintiff is racist, but Defendants Baucom and Yoder took no action to protect Plaintiff. *Id.* at 15. Plaintiff then alleges:

> "On 08/17/2018 the Plaintiff was assaulted and sexually abused by Terril Lee Cooks and Arrell Farmer. At 4:30 p.m. the Plaintiff was watching a movie in the day room. Terrill Cooks approached the Plaintiff demanding the remote to the T.V. The Plaintiff refused stating he was watching a movie. Terill Lee Cooks said 'Is that right' to the Plaintiff and walked to the POD door and picked up a broom." *Id.* at 16.

Cooks then allegedly threatened Plaintiff with the broom and, among other insults, called Plaintiff racist. *Id.*

Based on these allegations, Plaintiff's claim in Count II is, generally speaking, that (1) he warned the defendants of the risk he faced because of the rumor that he was racist, (2) the defendants did nothing, and (3) because of their inaction, Plaintiff was placed at substantial risk of serious harm, as seen when Cooks threatened to rape him. For this reasoning to succeed, however, the risk of harm—and the resulting harm Plaintiff allegedly suffered during the

12

dayroom confrontation with Cook—must be related to the risk of which the defendants were aware.

The Court concluded in the MOSC that Plaintiff failed to plead facts that support a plausible inference that the disagreement with Cook was related to the rumor, so the disagreement with Cooks was not a risk of harm that the defendants could have foreseen or disregarded. That conclusion resulted from the allegations in the amended complaint as detailed above, not from information in the *Martinez* report. Having again reviewed the amended complaint and carefully considered the Plaintiff's response, the Court is not persuaded otherwise. Accordingly, Count II will be dismissed.

### 3. Count III

With respect to Count III, the MOSC concluded that even taking all the allegations in the complaint as true, Plaintiff has not alleged a plausible constitutional claim for deliberate indifference based on the hallway incident. Although the allegations show that Defendant Yoder was aware of the flag, a flag by itself does not appear to meet the objective prong of the deliberate indifference test: that Plaintiff, by being alone in a hallway with Cooks, would face "conditions posing a substantial risk of serious harm." *See Farmer*, 511 U.S. at 834. The MOSC also concluded that Plaintiff's allegations that Defendant Yoder disregarded "an excessive risk to [Plaintiff's] health or safety," are merely conclusory and therefore did not state a claim upon which

13

relief can be granted. Finally, Cooks threatening Plaintiff for approximately 90 seconds did not constitute serious harm.

In his response, Plaintiff correctly points out that a prisoner need not actually suffer substantial harm to assert his or her constitutional right to be protected from an excessive risk to his or her health or safety. *See Farmer*, 511 U.S. at 845 ("'[O]ne does not have to await the consummation of threatened injury to obtain preventive relief.'"). But the remedy for unsafe conditions that have not yet caused harm is "injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm." *See id.* And for the reasons already set forth above, injunctive relief is not available to Plaintiff in this action.

Plaintiff's response also asserts that the Court erred by finding his allegations that Defendant Yoder knew of and disregarded a serious risk of substantial harm Plaintiff would face by being placed in a hallway with Cooks. (oc. 20, p. 9.) The facts alleged in the amended complaint, however, show that Defendant Yoder told Plaintiff that pulling him at the same time as Cooks "was a simple mistake" and that Defendant Yoder had "overlooked" the flag. (Doc. 8, 32.) Although Plaintiff does not believe Defendant Yoder, he has alleged no facts to support this belief. The Court has again reviewed the portions of the amended complaint dedicated to Count II and finds that Plaintiff has failed to plead facts, even if taken

14

as true, that allege a plausible claim of deliberate indifference in Count II.

### B. Denial of Access to Mental Health Care (Count IV)

The MOSC liberally construed Count IV as asserting a claim that Defendants Church, Baucom, and Yoder denied Plaintiff access to mental health services, but held that the facts alleged in support of this count do not allege specific dates and times that each specific defendant denied Plaintiff's requests for mental health services. Because the generalization makes it impossible to ascertain what unconstitutional act each defendant is alleged to have committed, the MOSC concluded that Plaintiff did not allege a plausible claim in Count IV.

In his response, Plaintiff reiterates that he "did not attempt to state a claim for a violation of Federal Law. He stated a claim for Deprivation of Federal Rights." (Doc. 20, p. 10.) Plaintiff again relies on his reasoning that if the SCDC, as an accredited facility, improperly denied him access to a "trained professional" as guaranteed by the PREA. *Id.* at 10-11. For the reasons already explained, however, Plaintiff is not entitled to sue for violations of the PREA, even when they are couched in terms of due process. Therefore, Count IV will be dismissed.

### C. Retaliation (Count V)

In the MOSC, the Court noted that an "inmate claiming retaliation must allege *specific facts* showing retaliation because

of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted). A prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 Fed. Appx. 845, 848 (10th Cir.2001)(citations omitted). The Court concluded that the complaint does not allege specific facts that demonstrate more than Plaintiff's personal belief that Defendants would not have taken the actions but for a retaliatory motive. Thus, he has failed to allege a plausible claim for unconstitutional retaliation.

In his response, Plaintiff contends that the facts supporting his claim are sufficient and plain. (Doc. 20, p. 6.) He points to his right to certain treatment and to use resources ensured by the PREA, which he asserts is protected by the Fourteenth Amendment's due process clause. *Id.* The Court has again reviewed the amended complaint and concludes that although Plaintiff repeatedly asserts that certain actions were taken in retaliation for his attempts to utilize PREA-guaranteed resources, Plaintiff has not alleged specific facts that demonstrate more than his personal belief in the alleged retaliatory motive.

Plaintiff was placed in administrative segregation after filing a PREA grievance, for example, but temporal proximity alone is not sufficient to plausibly allege retaliatory motive. Even taking all the facts alleged in the amended complaint as true and

16

considering them in the light most favorable to Plaintiff, he has failed to state a claim for unconstitutional retaliation. Thus, the Court will dismiss Count V.

### IV. Conclusion

In summary, the Court has considered Plaintiff's response and carefully reviewed the amended complaint in light of the arguments made therein. The Court concludes that Plaintiff may not seek injunctive, declaratory, or compensatory relief in this action. In addition, he has failed to state a claim upon which such relief could be granted. Accordingly, the Court will dismiss this action without prejudice.

**IT IS THEREFORE ORDERED** that this action is dismissed without prejudice for failure to state a claim upon which relief could be granted.

**IT IS SO ORDERED.**

DATED:  This 28th day of September, 2021, at Topeka, Kansas.


S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge